UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THERESA REED,

             Plaintiff,

             -against-

GARDEN CITY UNION FREE SCHOOL
DISTRICT, DAVID PERROTTA, NANINE
CUTTITTA, and KEVIN STEINGRUEBNER,
(in Their Official and Individual capacities
pursuant to NYEL §§ 290 et seq.),

             Defendants.
------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 12-4195

(Wexler, J.)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   DEC 16 2013   ★

LONG ISLAND OFFICE

APPEARANCES:

SCOTT MICHAEL MISHKIN, P.C.
By: Kyle T. Pulis, Esq.
One Suffolk Square Suite, Suite 240
Islandia, NY 11749
Attorneys for Plaintiff

SOKOLOFF STERN, LLP
By: Aam I. Kleinberg, Esq.
    Melissa L. Hotlzer, Esq.
179 Westbury Avenue
Carle Place, New York 11514
Attorneys for Defendants

WEXLER, District Judge:

      Plaintiff Theresa Reed ("Reed" or "Plaintiff") brings this action claiming that she was

discriminated as s result of her age, in violation of the Age Discrimination in Employment Act,

29 U.S.C. §§ 621 *et seq.*, ("ADEA"), 42 U.S.C. § 1983, and the New York State Human Rights

Law -- New York Executive Law §§ 290, *et seq.*, ("N.Y. Exec. Law"). Defendants Garden City

Union Free School District ("Garden City" or "District"), David Perrotta ("Perrotta"), Nanine

Cuttitta ("Cuttitta"), and Kevin Steingruebner ("Steingruebner") (collectively "Defendants")

move to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure

("Fed.R.Civ.P."), Rule 12(b)(6). For the reasons that follow, Defendants' motion is denied in

part and granted in part.

BACKGROUND

I.    Factual Background

According to the facts alleged in Plaintiff's complaint, Plaintiff, born July 6, 1946, was

hired by the Defendant Garden City School District in August 2006 as an indoor hall monitor at

the Garden City High School. To take this position, she resigned her position of twelve (12)

years as an outside monitor with another school district because she wanted an indoor position.

From her first day in September 2006, Plaintiff was assigned to monitor the outdoor parking lot

every day, while younger hall monitors were assigned to posts inside the building. She

repeatedly complained to Defendant Perotta, who was the Assistant Principal that she was treated

differently from the younger hall monitors but was ignored. Plaintiff further alleges that

Defendant Perotta was hostile and verbally abusive to Plaintiff on various occasions.

On December 21, 2006, she filed a formal letter of complaint to the then-Acting

Principal, Dr. Frank Banta, but nothing in her work assignment changed. In August 2007, she

met with Dr. Banta concerning her assignment for the upcoming school year, and was told that

despite her complaints, her work assignment would remain the same and she should "Take it or

leave it."

Defendant Cuttitta was hired as the Principal for the 2008-2009 school year. Plaintiff

suggested to Cuttitta that all the monitors rotate out to the parking lot. Plaintiff alleges that in

response, one younger monitor berated her and subjected her to hostile and abusive language

because of her request that all monitors be rotated outside. Plaintiff alleges this was in retaliation for her complaints that she was being treated differently. When Plaintiff complained to Defendant Perotta of the younger worker's treatment of her, nothing was done.

During the 2009-2010 and 2010-2011 school years, Plaintiff was assigned to assist various special needs students her younger co-workers were not assigned to, was denied breaks and overtime opportunities that were not denied to her younger co-workers, and treated differently from her younger co-workers.

On May 12, 2011, Defendant Steingruebner, another Assistant Principal at the school, called Plaintiff into his office stating that a teacher in the building reported hearing Plaintiff say "Fuck you David Perotta" while walking the hallways. Plaintiff denied these allegations, yet Steingruebner failed to investigate or take any other action concerning the accusation, and would not identify the teacher. Steingruebner asked Plaintiff how many years she had left to work and how old she was, to which she answered that she had no plans on retiring.

That weekend, Plaintiff prepared and filed a formal complaint against Steingruebner. The following week, Plaintiff received her first negative performance evaluation. On June 26, 2011, Plaintiff received a letter indicating her that her employment was terminated.

Thereafter, Plaintiff filed a timely notice of claim against the District and a written charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). This action was filed within ninety (90) days of receiving a right to sue letter from the EEOC.

II.     Plaintiff's Complaint and the Motion to Dismiss

As stated above, Plaintiff claims that Defendants have violated the ADEA by discriminating against Plaintiff due to her age, by retaliating against her for complaining of the

discrimination, and by creating a hostile work environment. Plaintiff also claims this discrimination violates equal protection under of 42 U.S.C. § 1983 and New York Exec. Law § 290, *et seq.*

In their motion to dismiss, Defendants argue that Plaintiff cannot seek recovery under both the ADEA and § 1983, and therefore Plaintiff's claim under § 1983 should be dismissed. Defendants further argue that the individual defendants should be entitled to qualified immunity. Finally, Defendants argue that the N.Y. Exec Law claims fail because the claim against the District is untimely, and the complaint fails to demonstrate that the individual defendants are "employers" subject to liability, or that Defendant Cuttitta "aided and abetted" the alleged discrimination. Defendants do not move against Plaintiff's ADEA claims.

## DISCUSSION

### I.     Standards on Motions to Dismiss

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaints as true, and draw all reasonable inferences in favor of plaintiffs. Bold Electric, Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the standard set forth in Conley v. Gibson, 355 U.S. 41 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," id. at 45-46. The Supreme Court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). Although heightened factual pleading is not the new standard, Twombley

holds that a "formulaic recitation of cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1959. Further, a pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Iqbal, 129 S. Ct. at 1950.

II.    The Present Motion

     A.  Plaintiff's 42 U.S.C. § 1983 Claims

     1.  ADEA Preemption

Defendants argue that the ADEA preempts claims for age discrimination under 42 U.S.C. § 1983, and therefore Plaintiff's § 1983 claims should be dismissed. Both parties recognize that the Second Circuit has not yet ruled on this issue. See Defendants' Memorandum of Law, at 6-7; Defendants' Reply Memorandum of Law, at 4-5; Plaintiff's Memoradum of Law, at 5-7. See also Butts  v. NYC Housing Preservation and Development, 307 Fed.Appx. 596, 598, n.1 (2d Cir. 2009) (acknowledging "no opinion of this court" that the ADEA preempts age discrimination claims under the equal protection clause of 42 U.S.C. § 1983); Piccone v. Town of Webster, 511 Fed.Appx. 63, 64, n. 1 (2d Cir. 2013) ("It is an open question in our circuit whether the ADEA preempts age discrimination claims under Section 1983."); Weinstein v. Garden City Union Free Schols District, 2013 WL 5507153, *20, n. 3 (E.D.N.Y. 2013) (Second Circuit has not ruled in favor of preemption and "overwhelmingly" holds that § 1983 claims with ADEA claims are cognizable) (string citation omitted). Nevertheless, Defendants urge the Court to follow the lead of other circuits that have ruled that § 1983 claims are preempted by the comprehensive scheme created by the ADEA. See Defendants' Memorandum of Law, at 6-7; Defendants' Reply Memorandum of Law, at 4-5; citing Zombro v. Baltimore City Police Dept.,

-5-

868 F.2d 1364, 1367-1369 (4th Cir. 1989) (the comprehensive scheme of the ADEA reflects

congressional intent to foreclose age discrimination claims under § 1983); other citations

omitted.[1]

The Second Circuit has consistently found that a plaintiff may bring a claim under § 1983

-- not to enforce rights conferred only by statute, but for distinct violations of a constitutional

right. Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004), citing Gierlinger v. New

York State Police, 15 F.3d 32, 34 (2d Cir. 1994); see, e.g., Saulpaugh v. Monroe Community

Hospital, 4 F.3d 134, 143 (2d Cir. 1993). See also Weinstein v. Garden City Union Free Schools

District, 2013 WL 5507153, at *20.

The Court is guided by the precedent of the Second Circuit, and rejects Defendants'

argument that the § 1983 claim is preempted by Plaintiff's ADEA claim. Plaintiff's complaint

alleges that she was treated differently from her younger co-workers in that she was assigned to

monitor the outside parking lot, was given different assignments, and denied break and overtime

opportunities that were allegedly given to her younger workers. Furthermore, she alleges that

when she complained she was being treated differently, she was dismissed by her superiors and

harassed by her co-workers. Plaintiff further alleges that she was accused of behaving

inappropriately without a proper investigation and was questioned about her age. Finally, she

alleges that when she formally complained, she was given a negative performance review for the

---

[1]The U.S. Supreme Court seemed poised to answer this question in Levin v. Madigan, 692 F.3d 607 (7th Cir. 2012), cert. granted, 133 S.Ct. 1600 (Mem), 185 L.Ed.2d 575, 81 USLW 3413, 81 USLW 3505, 81 USLW 3511 (U.S. March 18, 2013) (No. 12A455, 12-872). Following oral arguments, the writ of certiorari was dismissed as being improvidently granted. Madigan v. Levin, 134 S.Ct. 2, 82 USLW 4001 (U.S. October 15, 2013) (No. 12-872), cert. dismissed, 692 F.3d 607 (7th Cir. 2012).

first time, and ultimately terminated.

The Court notes that in this motion to dismiss, the above allegations of Plaintiff must be deemed true, with all reasonable inferences drawn in favor of the plaintiff. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). Plaintiff claims that she was treated differently as a result of her age. The Court finds that Plaintiff's complaint sufficiently alleges facts to substantiate a claim under § 1983, and thus denies Defendants' motion to dismiss Plaintiff's § 1983 claims on this basis.

### 2. Qualified Immunity

Defendants argue that if the § 1983 claims are not preempted by the ADEA claims, the individual Defendants should be entitled to qualified immunity, particularly because of the lack of clarity on this issue in the Second Circuit, and the § 1983 claims should thus be dismissed.

Qualified immunity protects an official from civil liability if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Taravella v. Town of Wolcott, 599 F.3d 129, 133 (2d Cir. 2010) (internal quotations, citations omitted). When evaluating whether qualified immunity applies, the court must enage in a two-part inquiry: 1) whether the constitutional right has been violated; and 2) whether that right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 230-231, 129 S.Ct. 808, 815-16, 172 L.Ed.2d 565 (2009). The sequence of this inquiry is left to the discretion of the judge undertaking the analysis. Id., 555 U.S. at 236, 129 S.Ct. at 818.

In evaluating a motion to dismiss and whether qualified immunity is available, the Court must "accept as true all well-pled factual allegations, and draw all reasonable inferences in the

plaintiff's favor." Warney v. Monroe County, 587 F.3d 113, 120 (2d Cir. 2009), citing Johnson v. Newburgh Enlarged School Dist., 239 F.3d 246, 250 (2d Cir. 2001).

Plaintiff's complaint alleges that she suffered various employment decisions that she claims were not imposed upon her younger co-workers. Namely, she alone was forced to monitor the outside parking lot when the other younger co-workers were not, she never received responses to her complaints, she suffered verbal abuse, and was given work assignments without consistent breaks and denied overtime opportunities in a manner different than imposed on her younger co-workers. Accepting these allegations as true, they sufficiently allege that a clearly established constitutional right was violated. Defendants' motion to dismiss Plaintiff's § 1983 claims on the grounds of qualified immunity is therefore denied.[2]

## B. State Law Claims under NYSHRL

### 1. Individual Defendants Are Not "Employers" Under N.Y. Exec. Law[3]

Plaintiff alleges violations of the N.Y. Exec. Law, which makes it unlawful for an employer to discriminate, *inter alia,* on the basis of age. N.Y. Exec. Law § 296(1). In addition, § 296(6) of that law makes it an unlawful discriminatory practice for any person to "aid, abet, incite, compel or coerce the doing of any of the acts forbidden under the article."

---

[2]Defendants also argue the Plaintiff's § 1983 claim is an impermissible "class of one" claim deemed inappropriate by the Supreme Court in Enquist v. Oregon Dept. of Agriculture, 553 U.S. 591, 128 S.Ct. 2146 (2008). See Defendants' Memorandum of Law, at 8-10. Yet Plaintiff claims she was discriminated against not as a "class of one" but as a result of her age, and therefore this argument fails.

[3]The parties refer to this law as either the NYSHRL or NYHRL – the New York State Human Rights Law. The Court will refer to it as the N.Y. Exec. Law.

While the Exec. Law does not define "employer," the New York Court of Appeals answered this question in <u>Patrowich v. Chemical Bank</u>, 63 N.Y.2d 541, 542 (1984), stating that "[a] corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division, is not individually subject to suit with respect to discrimination based on age ... under New York's Human Rights Law (Executive Law, art 15) ... if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." <u>See</u> <u>also</u> <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1317 (2d Cir.1995), abrogated on other grounds by <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); <u>Townsend v. Benjamin Enters., Inc.</u>, 679 F.3d 41, 57 (2d Cir. 2012) (an individual is liable under § 296(1) when that individual qualifies as an "employer," meaning with authority to do more than carry out employment decisions of others).

Defendants argue that N.Y. Education Law § 2554(2) vests a school district's Board of Education with the authority to appoint teachers, and therefore these individual Defendants, even if they had supervisory power, lacked sufficient authority or control over Plaintiff necessary to impose individual liability under the N.Y. Exec. Law.  Acknowledging this authority rests with the Board over teachers, Plaintiff argues that in this case, the individual Defendants did in fact have such authority over the Plaintiff, who was a hall monitor, not a teacher.  In support thereof, Plaintiff points to her termination letter of June 23, 2011, that indicates that these Defendants, and not the Board of Education, had such authority over this Plaintiff.  <u>See</u> Declaration of Kyle T. Pulis, Exhibit B.  This letter, signed by the Superintendent of Schools, Robert Fiersen, Ed.D. states, "At the end of each school year, building administrators meet with central administration

to review the performance of staff... After considerable consideration, it has been decided that the school district will not invite you back to work for the 2011/2012 school year. It is my understanding that your building principal [Defendant Cuttitta] has already spoken with you and advised you of this decision." The letter does not reference the Board of Education or any role it had in the decision to terminate Plaintiff. In accepting Plaintiff's allegations as true, as required when evaluating a motion to dismiss, the Court finds Plaintiff has adequately pled and the termination letter indicates, that these Defendants as the building administrators, rather than the Board of Education, had the power to carry out employment decisions concerning the Plaintiff and thus could be deemed "employers" as required to impose liability under the N.Y. Exec. Law. Therefore, those claims may proceed, and Defendants' motion to dismiss those claims against the individual Defendants is denied.

2. Whether Defendant Cuttitta Aided and Abetted in Violation of N.Y. Exec. Law

Plaintiff claims that Defendant Cutitta "aided" or "abetted" in discriminatory acts in violation of N.Y. Exec. § 296(6). Defendants argue that the facts that Plaintiff alleges regarding Defendant Cuttitta are insufficient to impose liability. Defendants also argue that Defendant Cuttitta cannot be liable for aiding and abetting for her own conduct. See Defendants' Reply Memorandum of Law, at 7, citing Reid v. Ingerman Smith LLP, 876 F.Supp.2d 176, 186-187 (E.D.N.Y.,2012) (the only defendant who engaged in the allegedly discriminatory conduct cannot also be liable for aiding and abetting in that conduct).

The facts of the case cited by Defendants do not apply here. It is possible for an individual to be liable under § 296(6) for "actually participating" in the discriminatory conduct

even thought he or she lacks the authority to hire or fire the plaintiffs. See Feingold v. New York, 366 F.3d 138, 157-158 (2d Cir. 2004), following Tomka, 66 F.3d at 1317. In the present case, Plaintiff alleges, *inter alia*, that she complained to Cuttitta, that Cuttitta never addressed Plaintiff's complaints, ultimately gave her a negative performance evaluation and subsequently terminated Plaintiff. Accepting these allegations as true, the Court finds the Plaintiff sufficiently alleges a claim under the N.Y. Exec. Law and hereby denies Defendants' motion to dismiss. See Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds by Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). [4]

### C. Plaintiff's Claim for Punitive Damages

Defendants move to dismiss Plaintiff's claim in the complaint for punitive damages. Defendants argue that Plaintiff failed to allege facts that warrant punitive damages, and that Plaintiff's attempt to recusitate the claim by styling it as one for "liquidated damages" in the context of this motion should be rejected. The Court denies Defendants' motion regarding punitive and liquidated damages, to be renewed through a motion for summary judgment following discovery or at the conclusion of the trial of this matter.

---

[4]The Court notes that Plaintiff concedes that her claim under N.Y. Exec. § 296 against the school district Defendant Garden City are not timely pursuant to N.Y. Educ. Law § 3813 requiring that such claims be brought within one year. Thus Defendants' motion to dismiss that claim is granted.

## CONCLUSION

For the reasons stated above, the Court hereby denies Defendants' motion to dismiss Plaintiff's claims under 42 U.S.C. § 1983 and N.Y. Exec Law § 296; and grants Defendants' motion to dismiss Plaintiff's N.Y. Exec. Law claim against the District.

SO ORDERED.

s/ Leonard D. Wexler

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
December 16, 2013